IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| RYAN DUMAS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-00510-CV-HFS |
| | ) | |
| JACKSON COUNTY, | ) | |
| MISSOURI, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS JACKSON COUNTY AND PICCININI'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Jackson County, Missouri and Joe Piccinini hereby answer
Plaintiff's First Amended Complaint (ECF No. 5-2) by denying an averment of fact
contained in the First Amended Complaint that is not expressly admitted, and
Defendants further answer as follows:

**NATURE OF THE ACTION**

1.     This is a civil rights action brought under 42 U.S.C. § 1983 against
Defendant Jackson county, Missouri, concerning the Jackson County Detention
Center's failure to train and/or supervise is correctional officers, its failure to protect
inmates of the Jackson County Detention Center, and its and its officers' failure to
intervene on attacks on Plaintiff, in violation of the Fourth, Eighth, and Fourteenth
Amendments to the United States Constitution. The actions and conduct of
Defendants are the result of a policy, practice, custom, and deliberate indifference on

1

the part of Defendant Jackson County, Missouri, as well as its agents acting in both their individual and official capacities.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

## PARTIES

2.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

3.     Plaintiff Ryan Dumas (hereinafter sometimes referred to as "Plaintiff") is a male citizen of the State of Missouri, residing in Blue Springs, Jackson County, Missouri.

**Answer: Upon information and belief, Defendants admit.**

4.     Defendant Jackson County, Missouri (hereinafter sometimes referred to as "Defendant Jackson County") is a governmental entity in the State of Missouri and owns, operations, manages, directs, and controls the Jackson County Department of Corrections and the Jackson County detention Center (hereinafter sometimes referred to as "JCDC"), which employs Defendant Joe Piccinini (hereinafter sometimes referred to as "Piccinini") and Defendant Officer Jane Doe (hereinafter sometimes referred to as "Defendant Jane Doe").

2

**Answer:** Defendants admit that Jackson County, Missouri is a governmental entity within the State of Missouri. Defendants further admit that the Jackson County Department of Corrections is a department within the executive branch created by the Jackson County Home Rule Charter. Defendants also admit that Defendant Joe Piccinini is currently an employee of Defendant Jackson County, Missouri. Defendants deny the remaining allegations contained in this paragraph.

5.     Defendant Piccinini is and was at all times relevant herein the Director of the Jackson County Department of Corrections. Consequently, he was a policy maker for Defendant JCDC, and he was Defendant Jane Doe's supervisor at all times relevant herein. He is sued in both his individual and official capacity.

**Answer:** Defendants admit that Defendant Joe Piccinini is currently the Director of the Jackson County Department of Corrections. Defendants further admit that Defendant Piccinini is a policymaker for the Jackson County Department of Corrections. Defendants deny the remaining allegations in this paragraph. To the extent this paragraph seeks a legal conclusion, Defendants provide no response, and therefore deny.

6.     Defendant Jane Doe is, and was at all times relevant herein, a corrections officer with JCDC and employed by Defendant Jackson County. She is sued in bother her individual and official capacity.

3

**Answer: The information in this paragraph is not directed toward Defendants Jackson County or Piccinini. To the extent an answer is required, Defendants deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no response, and therefore deny.**

### JURISDICTION AND VENUE

7. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

8. On or about May 9, 2017, Plaintiff filed his "petition" in Jackson County Circuit Court, State of Missouri.

**Answer: Admit.**

9. On or about June 21, 2017, Defendants filed a "Notice to Circuit Court of Jackson County Missouri at Kansas City, of Removal to federal Court" in Jackson County Circuit Court, State of Missouri citing 28 U.S.C. §§ 1441 and 1446 as the basis for removal.

**Answer: Admit.**

10. Jurisdiction and venue were proper in Jackson County, State of Missouri pursuant to RSMo. § 408.010, and Defendants' have consented to this venue of this Court by filing a Notice of Removal to the same.

**Answer: Admit.**

4

11.     Plaintiff's cause of action arises out of conduct that took place in Jackson County, Missouri.

**Answer: Admit.**

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### Background

12.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

13.     On or about September 8, 2016, Plaintiff was sentenced to thirty (30) days at JCDC for a probation violation.

**Answer: Upon information and belief, Defendants admit.**

14.     Plaintiff has several impairments, including, but not limited to, epilepsy, anxiety, and attention deficit hyperactivity disorder (ADHD).

**Answer: Upon information and belief, Defendants admit that it was reported that Plaintiff suffers from seizures. Defendants are without information or knowledge sufficient to admit or deny the remaining allegations contained in this paragraph, and therefore deny.**

15.     As such, Plaintiff was placed in one of the "medical pods" within JCDC.

**Answer: Defendants admit that Plaintiff was housed in medical housing for a period of time during his detention at the Jackson**

5

County Detention Center (JCDC). **Defendants are without information or knowledge sufficient to admit or deny the remaining allegations contained in this paragraph, and therefore deny.**

16.     Peter Hudson, Jr. (hereinafter sometimes referred to as "Hudson") was another inmate at JCDC.

**<u>Answer</u>: Defendants admit that there was an inmate incarcerated at JCDC named Peter H. Hudson. Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

17.     At all times relevant herein, Hudson was a pretrial detained being held at JCDC on several charges – two (2) counts of attempted rape in the first degree, three (3) counts of sodomy in the first degree, one count of burglary in the first degree, and one count of robbery in the second degree – stemming from a violent crime committed on or about December 29, 2014.

**<u>Answer</u>: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

18.     Hudson also has an extensive criminal history which includes, but is not limited to, felony convictions for possession with intent to distribute, tampering with the service of a utility or an institution, possession of a controlled substance, and assault in the second degree.

6

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

19.     The corrections officers, guards, and other staff members at JCDC knew or should have known of Hudson's past criminal history and of the crimes for which Hudson had most recently been charged.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

20.     Hudson was also known throughout the JCDC – by both inmates and JCDC staff – as a "shower shark," meaning he would "lurk" in the shadows and bathrooms, wait for other inmates to place themselves in a vulnerable position, and attempt to force the vulnerable inmates to have sex with him.

**Answer: Deny.**

21.     Based on the foregoing information regarding Hudson, which was known to the JCDC staff, the officers and guards within JCDC knew, or at least should have known, that Hudson posed a threat to fellow inmates.

**Answer: Deny.**

22.     Additionally, Hudson was known by both inmates and the staff at JCDC as a major drug dealer within JCDC facilities.

**Answer: Deny.**

7

23.    The JCDC staff, including the guards and corrections officers, did nothing to hinder Hudson's efforts as a "shower shark" and a drug dealer.

**Answer: Deny.**

24.    To the contrary, at least one correction's officer, Defendant Jane Doe, facilitated Hudson's drug dealing efforts by acting as the "drug mule" – the person on the "outside" who brings drugs into the jail – for Hudson and the other drug dealers within JCDC.

**Answer: Deny.**

## The Medical Pod

25.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

26.    As previously stated, at the time Plaintiff was transported to JCDC to serve his sentence, Plaintiff was placed in a medical pod.

**Answer: Defendants admit that Plaintiff was housed in J2B module which is a medical housing for a period of time during his detention at JCDC. Defendants are without information or knowledge sufficient to admit or deny the remaining allegations contained in this paragraph, and therefore deny.**

8

27.     In Plaintiff's medical pod, there were eight (8) individual cells, each of which housed one inmate and contained a bed and toilet.

**Answer: Defendants admit that in the J2B module, there are eight individual cells which contain a bed and toilet.**

28.     Plaintiff's medical pod also contained a "community" toilet, urinal, and showers, which could be accessed by the inmates during hours in which they were not confined to their individual cells.

**Answer: Defendants admit that J2B module has a day space area which contains a toilet and a shower that are accessible to inmates when they are in the day space area. Defendants deny the remaining allegations contained in this paragraph.**

29.     The medical pod had one entrance and exit door, and was surrounded by windows since no guards or officers were physically present in the medical pod.

**Answer: Defendants admit that J2B module has one entrance/exit door. Defendants further admit that J2B module has vision panels. Defendants deny the remaining allegations contained in this paragraph.**

30.     The sole door attached to the medical pod contained a "chuckhole," which was the slot used to slide the inmates' trays of food into the pod.

**Answer: Deny.**

31. At all times relevant herein, Plaintiff's medical pod – much like JCDC as a whole – was overcrowded. As such, there were four (4) beds, in addition to the beds in the individual cells, placed in the "open area" of the medical pod.

**Answer: Defendants admit that there were bunks in day space area of the J2B module. To the extent this paragraph seeks a legal conclusion, Defendants provide no response, and therefore deny.**

32. Upon his arrival at JCDC, Plaintiff was assigned to one of the beds in the medical pods open area rather than being placed in an individual cell.

**Answer: Defendants admit that during his time in the J2B module, Plaintiff was housed on a bunk in the day space area. Defendants are without information or knowledge sufficient to admit or deny the remaining allegations contained in this paragraph, and therefore deny.**

33. After Plaintiff has been incarcerated for a few days, Hudson was transferred into the Plaintiff's medical pod and assigned to one of the individual cells.

**Answer: Defendants admit that inmate Peter Hudson was housed in module J2B in an individual cell for a period of time during his incarceration at JCDC.**

34. Hudson's cell was located almost directly in front of Plaintiff's bed.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

10

## Plaintiff's Interactions with Hudson

35.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

> **Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

36.     After Hudson was placed in the medical pod, Hudson, on numerous occasions, attempted to interact and/or converse with Plaintiff.

> **Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

37.     For example, there was at least one occasion wherein Plaintiff was sitting on his bed and Hudson kept haggling Plaintiff about his feet, insisting that Plaintiff remove his shoes and socks – apparently to satisfy some sort of "fetish" Hudson had.

> **Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

38.     On other occasions, Hudson informed Plaintiff that he has cocaine, methamphetamine, and Xanax, and asked Plaintiff to buy said drugs from him.

**Answer**: **Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

39. Plaintiff refused to buy drugs from Hudson.

**Answer**: **Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

40. On or about September 13, 2016, Plaintiff was waiting in line to use the telephone after dinner.

**Answer**: **Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

41. While Plaintiff was waiting in line, he noticed that Hudson was using the telephone.

**Answer**: **Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

42. When it became Plaintiff's turn to use the telephone, he was unable to make a call and was informed that all seventy (70) minutes of telephone time that has been purchased for Plaintiff were used.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

43.    Up to that point, Plaintiff had not personally used anywhere near his allotted seventy (70) minutes of telephone time.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

44.    As such, Plaintiff became suspicious of his fellow inmates in the medical pod.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

45.    Shortly    thereafter,    Plaintiff    became    aware    that,    previously unbeknownst to Plaintiff, Hudson has somehow obtained Plaintiff's PIN number and has used up all of Plaintiff's telephone minutes.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

46.    Plaintiff decided not to approach Hudson about the issue, as he did not want to create conflict with Hudson or any of his other fellow inmates.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

## Supervision at JCDC

47.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

48.     As previously stated, JCDC did not have guards or officers physically present in the Plaintiff's medical pod at all times, despite the fact that not all inmates were locked in individual cells.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

49.     Plaintiff is under information and belief that JCDC guards or officers were required to "make rounds" every twenty-nine (29) minutes, meaning that a guard or officer was expected to check each area of the jail, including the medical pods, nearly every half-hour.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

50. To the contrary, during Plaintiff's time at JCDC, Plaintiff would see a guard or officer walk by the medical pod once every several hours (sometimes 3 or 4 hours would go by in between rounds), and on several occasions, would only see a guard or officer walk by once twice a day.

**Answer: Deny.**

51. Plaintiff is under information and belief that, following dinner and the allotted inmate telephone time, medical pod inmates, such as Hudson, were supposed to be locked in their individual cells for the remainder of the night – except for those who had been assigned to beds in the open area in the Plaintiff's medical pod.

**Answer: Deny.**

## The Sexual Assault

52. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

53. On or about the evening of September 13, 2016, following dinner and the allotted inmate telephone time, the medical pod inmates were being confined to their individual cells or told to retire to their assigned beds.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

15

54.     However, that evening, Hudson intentionally clogged the toilet in his cell.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

55.     As such, Hudson told one of the JCDC officers that he needed his cell to be unlocked so that he could have access to the community toilet throughout the night.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

56.     Rather than simply making arrangement to have the toilet unclogged while still confining Hudson to his cell, the officer complied with Hudson's request.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

57.     Thus, Hudson's cell was not locked during the late night and early morning hours of approximately September 13, 2016 to September 14, 2016.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

58. Sometime during the late night or early morning of September 13, 2016 to September 14, 2016, Plaintiff had to use the restroom.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

59. As such, Plaintiff walked over to the urinal in the medical pod's open area and began unbuttoning his jumpsuit so that he could urinate.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

60. At this same time, Hudson left his unlocked cell, walked up directly behind Plaintiff, and said "[d]on't say a word" quietly into Plaintiff's ear.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

61. Plaintiff, recognizing Hudson's voice from previous interactions with Hudson, immediately became terrified.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

62.     Hudson then forcibly unbuttoned the rest of Plaintiff's jumpsuit, pulled Plaintiff's underwear down, and slammed Plaintiff's head into the urinal, causing Plaintiff to lose several teeth, fall to the floor, and partially lose consciousness.

**<u>Answer</u>: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

63.     After slamming Plaintiff into the urinal, Hudson began to forcibly rape Plaintiff.

**<u>Answer</u>: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

64.     Hudson continued forcibly raping Plaintiff for several minutes until Defendant Jane Doe, the aforementioned "drug mule," appeared at the door of the medical pod.

**<u>Answer</u>: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

65.     At that point, Hudson hurriedly jumped off Plaintiff and went back into his cell.

**<u>Answer</u>: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

66.     Upon realizing that it was Defendant Jane Doe at the door, Hudson got up and went to the door.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

67.     When Hudson got to the door, defendant Jane Doe handed Hudson a plastic bag filled with white powder, which Plaintiff believed to contain illicit drugs, through the chuckhole.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

68.     At the time Defendant Jane Doe arrived at the door, Plaintiff was lying on the floor, bloodied and battered with tears in his eyes.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

69.     As such, Defendant Jane Doe certainly should have recognized that Plaintiff likely had been assaulted or, at the very least, needed medical attention.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

19

70.     Rather than attempting to assist Plaintiff, Defendant Jane Doe simply looked at Plaintiff for a brief second, handed the bag of drugs, and left the area without saying a word to Plaintiff.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

71.     Once Defendant Jane Doe left the area, Hudson walked back over to Plaintiff, got on top of Plaintiff, and again began forcibly raping Plaintiff.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

72.     After Hudson's continued rape of Plaintiff had been taking place for several minutes, a JCDC officer named Mendez (hereinafter sometimes referred to as "Mendez") entered into the medical pod.

**Answer: Defendants admit that on or about September 14, 2016, Corrections Officer Mendez entered J2AB module for a well-being check. Defendants are without information or knowledge sufficient to admit or deny the remaining allegations contained in this paragraph, and therefore deny.**

73.     When Hudson saw Mendez enter the medical pod, Hudson jumped off Plaintiff and rushed back into his cell.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the remaining allegations contained in this paragraph, and therefore deny.**

74.     Upon entering the cell, Mendez found Plaintiff laying on the ground, still bloodied and battered with tears in his eyes, and immediately ran over to Plaintiff and grabbed Plaintiff, rushing him out of the medical pod.

**Answer: Deny.**

75.     Plaintiff was then transported by Mendez to a holding cell.

**Answer: Defendants admit that Plaintiff was removed from the J2B module and was taken to a holding cell.**

76.     Plaintiff sat in the holding cell alone for nearly an hour before he was able to speak with anyone about the incident.

**Answer: Deny.**

### Post-Sexual Assault

77.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

78.     After sitting in the holding cell for nearly an hour, two Jackson County sheriff's deputies entered the cell and interviewed Plaintiff about the incident.

21

**Answer**: **Defendants admit that on or about September 14, 2016 two Jackson County Sheriff's Office deputies spoke with Plaintiff. Defendants are without information or knowledge sufficient to admit or deny the remaining allegations contained in this paragraph, and therefore deny.**

79.     Plaintiff is under information and belief that an ambulance has been called following the incident, and that the paramedics has been attempting to enter JCDC for quite some time but were unable to get into the facility due to the corrections' officers lack of urgency regarding the situation.

**Answer**: **Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

80.     Following Plaintiff's interview with the sheriff's deputies, Plaintiff was transported via ambulance to Truman Medical Center (hereinafter sometimes referred to as "TMC"), a hospital in Kansas City, Missouri.

**Answer**: **Defendants admit that on or about September 14, 2016 two Jackson County Sheriff's Office deputies spoke with Plaintiff. Defendants further admit that Plaintiff was transported to Truman Medical Center.**

81.     Upon his arrival at TMC, Plaintiff had several tests performed on him, one of which was an HIV test, as Plaintiff eventually learned that Hudson has AIDS.

22

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

82.    Plaintiff was at TMC for approximately fourteen (14) hours, during which time, he was consistently denied the ability to use a telephone.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

83.    After his brief stay at TMC, Plaintiff was transported back to JCDC and placed in solitary confinement for several days.

**Answer: Defendants admit that Plaintiff returned to JCDC from TMC on or about September 14, 2016. Defendants deny the remaining allegations contained in this paragraph.**

84.    Plaintiff was released back into general population at JCDC after spending the aforementioned several days in solitary confinement.

**Answer: Defendants admit that Plaintiff was reclassified to general population. Defendants deny the remaining allegations contained in this paragraph.**

85.    By the time Plaintiff was released into general population, word had gotten around to nearly all the corrections officers and inmates at JCDC about Hudson's rape of Plaintiff.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

86. Shortly after being released into general population, a correction's officer named Brent Rosvell (hereinafter sometimes referred to as "Rosvell") approached Plaintiff and told Plaintiff that he needed to "admit that the (rape) never happened."

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

87. Rosvell threatened Plaintiff by saying that, if Plaintiff did not admit that the rape never took place, Rosvell would "make 'things' happen."

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

88. Plaintiff took this threat by Rosvell to mean that, if Plaintiff did not falsely admit that the rape never happened, Rosvell would inflict serious physical pain onto Plaintiff, either personally or by allowing inmates to assault and batter Plaintiff without intervention from any JCDC guards or officers.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

89.    A few days later, Plaintiff was approached by two (2) more corrections officers who similarly attempted to coerce Plaintiff into says that he falsified the entire incident and made similar threats to Plaintiff if he did not comply with the officers' coercions.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

90.    Throughout the rest of Plaintiff's sentence at JCDC, several inmates who were close friends of Hudson's made similar threated to Plaintiff as those of Rosvell and the other officers.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

91.    On numerous occasions, said inmates attempted to coerce Plaintiff into making a telephone call to someone and making a statement to the effect that Plaintiff had "made up" the entire incident with Hudson.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

92.    Said individuals knew that all inmate phone call were recorded, and thus, they believed that a phone recording of Plaintiff stating that the rape never

occurred would amount to a "confession" by Plaintiff which would ultimately "exonerate" Hudson of the rape.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

93.     Nonetheless, Plaintiff refused to give in to these attempted coercions, and served the remainder of his sentence while continuing to be harassed by inmates and JCDC guards and officers about the incident involving Hudson.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

94.     As a direct and proximate result of the foregoing, Plaintiff has suffered – and continues to suffer – physical injuries and severe mental and emotional trauma.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

95.     As a direct and proximate result of the foregoing, Plaintiff has suffered – and continues to suffer – physical and psychological harm, pain and suffering, personal humiliation, increased paranoia, garden variety emotional distress, and other related compensatory damages.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

26

96. At all times relevant herein, the conduct of Defendants was willful, wanton, and reckless disregard of Plaintiff's rights under state and federal law.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

97. Plaintiff is under information and belief that the aforementioned violations of Plaintiff's constitutional rights are a part of a pattern and practice of similar behavior on the part of Defendants.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

**JAIL POLICIES AND CUSTOMS THAT CAUSED INJURY TO PLAINTIFF**

**Overview**

98. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

99. Jackson County Jail has been under direct federal supervision for thirty-three of the last forty-five years, and has a long history of abuse, neglect, overcrowding, underpayment of employees, and sexual assaults. *See* Plaintiff's Exhibit 1.[1]

---

[1] Citations to Plaintiff's Exhibits have been omitted as the exhibits are attached to the First Amended Complaint, ECF No. 5-2.

**Answer: Defendants admit that the Jackson County Department of Corrections was under a federal consent decree from 1986 to 2007. Defendants deny the remaining allegations contained in this paragraph.**

100.     Famously, Jackson County Department of Corrections was created as a response to Sheriff Owsley flying the American flag upside down at the old jail to protest the county's neglect. Jackson County explicitly authorized the use of non-sworn law enforcement employees when it founded the Department of Corrections. *Id*.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

101.     As identified by the County's own Jackson County Department of Corrections task Force (hereinafter sometimes referred to as "the Task Force"), "all the data that we've received indicates two distinct factors ... accreditation and long-term practice of using less than market level pay scale combined with retention issues and training issues," have crippled JCDC's guards' ability to protect inmates, respond and intervene to inmate attacks, to train and supervise guards, and protect inmates' constitutional rights. *See* Plaintiff's Exhibit 2.

**Answer: Deny.**

102.     Six JCDC guards have been indicted on federal charges in 2017. *See* Plaintiff's Exhibit 3 and Plaintiff's Exhibit 4.

**Answer**: **Defendants admit that six former Jackson County Department of Corrections employees have been indicted on federal charges in 2017.**

103.   On August 26, 2016, only eighteen says prior to the Plaintiff being attacked and raped, another inmate was raped. *See* Plaintiff's Exhibit 5.

**Answer**: **Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

104.   JCDC has lacked any accreditation for twenty-one years.

**Answer**: **Upon information and belief, Defendants admit that the Jackson County Department of Corrections was last accredited in 1996.**

**Guards Customarily Smuggle Narcotics and Contraband into JCDC**

105.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer**: **Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

106.   On June 25, 2017, JCDC was raided by the FBI and other law enforcement organizations to bust a guard-run smuggling operation, similar to the one alleged in this Complaint.

29

**Answer: Defendants admit that there was a planned sweep of JCDC which occurred on June 25, 2017. Defendants deny the remaining allegations contained in this paragraph.**

107.    The June 25th raid was the second raid of JCDC in less than eighteen months. *See* Plaintiff's Exhibit 6.

**Answer: Defendants admit that the planned sweep which occurred on June 25, 2017 was the second such sweep in the past eighteen months. Defendants deny the remaining allegations contained in this paragraph.**

108.    When guards smuggle drugs and other contraband into JCDC it creates conflicts of interest that cause unconstitutional behavior and rights violations. For example, in the most recent raid, two guards and one inmate were arrested and charges were filed for smuggling narcotics into the jail and running a drug ring inside JCDC. These criminal relationships heavily disincentivize guards from punishing inmates who are co-conspirators, or protecting inmates who are not conspirators from inmates who are. *See* Plaintiff's Exhibit 3.

**Answer: Deny.**

109.    JCDC and Piccinini showed deliberate indifference and tacit authorization of guard smuggling and conspiracy with inmates, even after receiving notice in the form of inmate complaints and FBI investigations.

**Answer: Deny.**

110.   Guard smuggling is a continued and widespread problem in JCDC and evidences a persistent pattern of unconstitutional misconduct by JCDC's employees.

**<u>Answer</u>: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

111.   The Plaintiff was injured by acts pursuant to the custom of JCDC's guard smuggling drugs in and throughout the facility. Jane Doe's actions demonstrate how guards acting in league with inmates have a deleterious effect on safety and security because she failed to intervene in the assault, and instead delivered contraband to Hudson.

**<u>Answer</u>: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

112.   JCDC and Piccinini should have had notice of guard smuggling. The FBI had been investigating JCDC for approximately one year at the time the Plaintiff was attacked.

**<u>Answer</u>: Deny.**

113.   Guard smuggling is a foreseeable outcome of exceptionally law pay.

**<u>Answer</u>: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

<u>**JCDC's Policy of Underpaying Guards**</u>

114.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

31

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

115.    JCDC and Piccinini pursued a policy of underpaying guards by using non-sworn law enforcement personnel, as mandated by Jackson County, and choosing to pay $11.45 per hour. *See* Plaintiff Exhibit 2.

**Answer: Deny.**

116.    JCDC has at all relevant times the "lowest starting salary" for guards in the region. See Plaintiff's Exhibit 2.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

117.    Other local facilities use sheriff's deputies or sworn law enforcement personnel.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

118.    Low pay causes exceptionally high turnover rates which contribute to understaffing, overworking, and undertraining guards. See Plaintiff's Exhibit 7.

**Answer: Deny.**

119.    Despite the Task Force's recommendation to increase salaries, JCDC and Piccinini have not materially raised pay.

**Answer: Deny.**

120. The policy of low pay for guards caused a 44.91% turnover rate in 2015, as identified by the Task Force. *See* Plaintiff's Exhibit 2.

**Answer: Deny.**

121. The policy of law pay for guards caused enormous understaffing issues, and undertraining.

**Answer: Deny.**

122. Undertrained and understaffed guards are ineffective at preventing constitutional rights violations of inmates, including sexual assault.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

123. While JCDC has always been a dangerous place for inmates, it is clear that over the last three years, conditions have worsened substantially. In 2013, Sheriff's deputies took thirteen incident reports at JCDC. In 2014, they took sixty. In 2015, deputies took on hundred and forty-five incident reports, and in 2016, deputies took one hundred sixty-one. *See* Plaintiff's Exhibit 8.

**Answer: Deny.**

124. As noted by the County's own Task Force report, the extreme rise in incidents at JCDC corresponds to the "personnel crisis," and "increased turnover of corrections officers and less qualified candidates replacing them," because the "existing pay structure is not sufficient to retain well trained employees." See Plaintiff's Exhibit 2.

**Answer**: **Deny.**

125.   The choice to pursue a policy of underpaying guards was made by an official determined by state law to have final authority to establish governmental policy.

**Answer**: **Deny.**

126.   The Plaintiff was injured by the Defendants' policy of underpaying guards. On the night he was attached, guards did not perform their required rounds. More guards with better training and supervision would have prevented the Plaintiff from being attacked or ended the attack sooner.

**Answer**: **Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

## JCDC's Policy and/or Custom of Overcrowding

127.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer**: **Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

128.   JCDC has a maximum capacity of seven hundred and twenty nine inmates. See Plaintiff's Exhibit 2.

**Answer**: **Deny.**

129.    In 2015, the last year for which numbers are available, JCDC has an *average* daily inmate total of nine hundred and nineteen. Emphasis in original, *See* Plaintiff's Exhibit 9.

**<u>Answer</u>: Deny.**

130.    Overcrowding, particularly combined with understaffing, creates dangerous conditions and constitutional violations.

**<u>Answer</u>: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

131.    In particular, the medical pod that Plaintiff was paced into was fifty percent over capacity and, as a result, Plaintiff was exposed to danger because he did not have a cell.

**<u>Answer</u>: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

132.    Additionally, overcrowding over burdens the infrastructure, which causes plumbing, doors, cameras, and other protective measures to fail.

**<u>Answer</u>: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

133.    JCDC is deliberately pursuing overcrowding as a cost-saving measure compared to alternatives like paying for other facilities to handle overflow, or developing broader release guidelines. JCDC previously sent overflow inmates to other facilities as a part of a federal supervision order, but has changed policies since the termination of supervision. *See* Plaintiff's Exhibit 1.

35

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

134.    The choice to pursue a policy of overcrowding was made by an official determined by state law to have final authority to establish governmental policy.

**Answer: Deny.**

135.    Alternatively, overcrowding is customary at JCDC.

 **Answer: Deny.**

136.    JCDC's overcrowding is a primary cause of constitutional rights violations and exhibits a continuing and persistent pattern of unconstitutional misconduct.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

137.    Specifically, the inmate to guard ratio is too high to adequately perform rounds, to prevent sexual attacks, and to intervene in and stop ongoing attacks.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

138.    JCDC and Piccinini showed deliberate indifference to the overcrowding and had obvious notice, as evidenced by the statistics published by the County's own website. *See* Plaintiff's Exhibit 9.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

139.   The Plaintiff's injuries were caused by acts pursuant to the custom of overcrowding. Plaintiff was left exposed on the floor of the medical pod rather than protected in a cell, because the medical pod was fifty percent over capacity. Additionally, Plaintiff was raped multiple times over several hours without intervention from guards.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

### JCDC and Piccinini's Policy to Not Pursue Accreditation with the American Correctional Association

140.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

141.   JCDC has not been accredited since 1996.

**Answer: Upon information and belief, Defendants admit.**

142.   Not pursing accreditation is a deliberate choice to follow a course of action made from various alternatives by official who are determined by state law to have final authority to establish government policy.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendant provide no answer.**

37

143.    As the Task force identified, "the other significant challenge is the lack accreditation. Having accreditation provides external oversight and a provision for establishing standard practices for operations. Many of these issues brought out through this process can be addressed by establishing an accreditation process. This is the single most important change to enable JCDC to address most of the issues heard by this task force." *See* Plaintiff's Exhibit 2.

**Answer**: **Deny.**

144.    Because of JCDC's lack of accreditation, it has not been inspected by an outside agency for twenty-one years. *See* Plaintiff's Exhibit 1.

**Answer**: **Deny.**

145.    The policy of not accrediting JCDC has created a culture that lacks accountability.

**Answer**: **Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

146.    A policy of accreditation would set standards for facilities, maintenance, training, and other critical operations, as well as providing outside evaluation.

**Answer**: **Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

147.    A policy that does not pursue accreditation is a policy that has no institutional accountability, and a policy that deliberated prioritized *lower* or no standards. (Emphasis in original).

38

**Answer:** Deny. To the extent this paragraph seeks a legal conclusion, Defendant provide no answer.

148. JCDC guards received twenty-two hours less training than their sworn law enforcement counterparts in most other jails across the state of Missouri. *See* Plaintiff's Exhibit 7.

**Answer:** Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.

149. Numerous standards outlined by the American Correctional Association were violated, including but not limited to: Guard Posts, Personal Contact, Sufficient Staffing, Facility Design, Single Occupancy Cells, Plumbing Fixtures, and Sexual Assault. *See* Plaintiff's Exhibit 10.

**Answer:** Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.

150. Failing to obtain accreditation, and thus implement minimum standards, directly led to and exacerbated Plaintiff's injuries.

**Answer:** Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.

151. The lack of a properly staffed and placed guard post allowed the Plaintiff to be at the mercy of an attack because no guard was there to observe and stop the rape.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

152. The lack of personal contact between guards and inmates caused the Plaintiff to be at the mercy of a much larger attacker, because no guards were ever physically inside the medical pod.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

153. Additionally, Hudson's unrestricted movement allowed him to access the Plaintiff an attack him.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

154. JCDC's understaffing did not ensure the necessary number of guards to prevent or intervene in an attack.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

155. The medical pod was not designed to facilitate continuous personal contact and observation between guards and inmates and that ensured that an undertrained and undermanned staff did not prevent the attack or intervene for several hours.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

156. The Plaintiff was denied a single occupancy cell, which left him completely exposed to Hudson's attack.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

157. JCDC did not follow common sense or American Correctional Association standards on plumbing fixtures. Rather than providing Hudson working plumbing in his cell, the guards merely left the door open so that Hudson could use a communal bathroom. As a result, Hudson was left free to roam and attacked the Plaintiff.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

158. JCDC did not provide the Plaintiff with information about prevention of sexual assault or how to report sexual abuse, and this contributed to his attack.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

159. In addition to the Jackson County Department of Corrections Task Force Final Report (Plaintiff's Exhibit 2), the news article found in the Plaintiff's Exhibits 1 and 3-8, demonstrate a public awareness of the policy violations within JCDC and should have put Defendants on notice of such policy violations.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

41

160.   In addition to the Jackson County Department of Corrections Task Force Final Report (Plaintiff's Exhibit 2), the new articles found in the Plaintiff's Exhibit 1 and 3-8, demonstrate other allegations of policy violations from former inmates that show a continuous and willful condoning of the policy violations occurring within JCDC and should have put Defendant on notice of such policy violations.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

## COUNT I:
## FAILURE TO PROTECT RESULTING IN THE DEPRIVATION OF RIGHTS UNDER THE EIGHTH AMENDMENT, COGNIZABLE UNDER 42 U.S.C. § 1983
### *As to all Defendants*

161.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

162.   As described herein, Hudson forcibly raped Plaintiff on two separate occasions on or about the late night/early morning hours of September 13, 2016 and September 14, 2016.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny.**

42

163. Defendants were aware of the substantial risk of the attack on Plaintiff, as Hudson was well-known throughout JCDC as a "shower shark" who preyed on smaller, perceivably weaker inmates and attempted to force said inmates to have sex with him; because Defendant knew of the charges against Hudson which included multiple counts of forcible rape and sodomy; and because Hudson's cell was left open and unlocked on or about the late night and/or early morning hours of September 13, 2016 and September 14, 2016.

**Answer: Defendants are without information or knowledge sufficient to admit or deny the allegations contained in this paragraph, and therefore deny. To the extent this paragraph seeks a legal conclusion, Defendants deny.**

164. Defendants, with deliberate indifference, to Plaintiff's need to be protected from such an attack, failed to protect Plaintiff from the attack by Hudson.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

165. At all times relevant herein, the individual Defendants were acting under color of law prescribed to them and/or pursuant to the policies, customs, and/or practices of Defendant Jackson County.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

166. Plaintiff is under information and belief that, at all times relevant herein, Defendant Piccinini had policymaking authority over the policies and

43

procedures of Defendant Jackson County and JCDC that directly and proximately resulted in the deprivations of Plaintiff's Constitutional rights.

**Answer**: **Defendants admit that Defendant Piccinini is a policymaker for the Jackson County Department of Corrections. Defendants deny the remaining allegations contained in this paragraph.**

167. As a direct and proximate result of the foregoing, Plaintiff has suffered – and continues to suffer, physical and psychological injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

**Answer:** **The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

168. As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed deliberate indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amounts sufficient to punish Defendants and/or deter them and others similarly situated from such conduct in the future.

**Answer:** **The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

169. No Defendant is entitled to qualified immunity for their actions.

**Answer:** **The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

170.    Plaintiff is entitled to reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

## COUNT II:
## FAILURE TO INTERVENE RESULTING IN THE DEPRIVATION OF RIGHTS UNDER THE FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS, COGNIZABLE UNDER 42 U.S.C. § 1983
### *As to Defendant Jane Doe*

This allegations in Count II are not direct to Defendant Jackson County and/or Defendant Joe Piccinini. Therefore, no response is required. To the extent one is deemed necessary, Defendants Jackson County and Piccinini deny the allegations as stated in Count II.

## COUNT III:
## FAILURE TO TRAIN RESULTING IN DEPRIVATION OF RIGHT UNDER THE FOURTH AND FOURTEENTH AMENDMENTS, COGNIZABLE UNDER 42 U.S.C. § 1983
### *As to Defendants Jackson County and Joe Piccinini*

184.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporates as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

185.    As demonstrated herein, the actions and/or inactions of Defendants, including, but not limited to, Defendant Jane Doe and other agents and/or employees

of JCDC, deprived Plaintiff of his Constitutional rights to be free from an attack while incarcerated.

**Answer:** **The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

186.    At all times relevant herein, Defendants, including Defendant Jane doe, acted under color of law prescribed to them and/or pursuant to policies, customs, and/or practices of Defendant Jackson County.

**Answer:** **The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

187.    At all times relevant herein, Plaintiff is under information and belief that the training policies of Defendants Jackson County and Piccinini were not adequate to train their officer and employees to handle the usual and recurring situations with which they must deal.

**Answer: Deny.**

188.    Defendants Jackson County and Piccinini were deliberately indifferent to the obvious consequences of their failure to train is officers and employees adequately.

**Answer:** **The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

189.    The failure of Defendants Jackson County and Piccinini to provide adequate training caused the deprivations of Plaintiff's rights by Hudson, Defendant Jane Doe, and others; that is, Defendant's failure to train is so closely related to the

46

deprivation of Plaintiff's Constitutional rights as to be the moving force that caused the ultimate injury to Plaintiff.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

190.   Defendants Jackson County and Piccinini were or should personally have been aware that Plaintiff faced a substantial risk of serious harm by failing to properly train their subordinate officers as set forth herein.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

191.   As a direct and proximate result of the foregoing, Plaintiff has suffered – and continues to suffer, physical and psychological injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

192.   As shown by the foregoing, Defendant Jane Doe's conduct was willful, wanton, and malicious, and showed deliberate indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amounts sufficient to punish Defendant Jane Doe and/or deter her and others similarly situated from such conduct in the future.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

47

193. Plaintiff is under information and belief that the aforementioned violations of Plaintiff's Constitutional rights is part of a pattern and practice of similar behavior on the part of Defendants.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

194. No Defendant is entitled to qualified immunity for their actions.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

195. Plaintiff is under information and belief that, at all times relevant herein, Defendant Piccinini has policymaking authority over the policies and procedures of Defendant Jackson County and JCDC that directly and proximately resulted in the deprivation of Plaintiff's Constitutional rights.

**Answer: Defendants admit that Defendant Piccinini is a policymaker for the Jackson County Department of Corrections. Defendants deny the remaining allegations contained in this paragraph.**

196. Plaintiff is entitled to reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

## COUNT IV:
## FAILURE TO SUPERVISE RESULTING IN THE DEPRIVATION OF
## RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS,
## COGNIZABLE UNDER 42 U.S.C. § 1983
### *As to Defendants Jackson County and Joe Piccinini*

197.    The allegation contained in all aforementioned Paragraphs are hereby realleged and incorporates as if set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

198.    As demonstrated herein, the actions and/or inactions of Defendants, including, but not limited to, Defendant Jane Doe and other agents and/or employees of JCDC, deprived Plaintiff of his Constitutional rights to be free from attack while incarcerated.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

199.    Defendants Jackson County and Piccinini personally knew that Hudson and their subordinates, namely Defendant Jane Doe, were engaging in the aforementioned acts which caused Plaintiff to face a substantial risk of serious harm.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

200.    Plaintiff is under information and belief that Defendants Jackson County and Piccinini provided in adequate supervision of their subordinates so as to

49

ensure compliance with existing department (JCDC) policies and procedures, as well as appropriate "industry standards."

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

201.    Plaintiff is under information and belief that the violation of Plaintiff's Constitutional rights as set forth herein were not the first committed within JCDC by Defendant Jackson County officers and employees, namely subordinates of Defendant Piccinini.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

202.    Defendants Jackson County and Piccinini made a deliberate choice not to provide adequate supervision over their subordinates.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

203.    Moreover, Defendants Jackson County and Piccinini should have been aware of widespread abuse, meaning abuse that was obvious, flagrant, rampant, and of continued duration thus putting Defendants on notice of the need to take corrective action through heightened supervision of their subordinates.

**Answer: Deny. To the extent this paragraph seeks a legal conclusion, Defendants provide no answer.**

204.   At all times relevant herein, all individual Defendants were acting under color of law prescribed to them and/or pursuant to the policies, customs, and/or practices of Defendant Jackson County.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

205.   Plaintiff is under information and belief that, at all times relevant herein, Defendant Piccinini had policymaking authority over the policies and procedures of Defendant Jackson County and JCDC that directly and proximately resulted in the deprivation of Plaintiff's Constitutional rights.

**Answer: Defendants admit that Defendant Piccinini is a policymaker for the Jackson County Department of Corrections. Defendants deny the remaining allegations contained in this paragraph.**

206.   As a direct and proximate result of the foregoing, Plaintiff has suffered – and continues to suffer, physical and psychological injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

207.   As shown by the foregoing, Defendant Jane Doe's conduct was willful, wanton, and malicious, and showed deliberate indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an

award of punitive damages in an amounts sufficient to punish Defendant Jane Doe and/or deter her and others similarly situated from such conduct in the future.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

208. Plaintiff is under information and belief that the aforementioned violations of Plaintiff's Constitutional rights is part of a pattern and practice of similar behavior on the part of Defendants.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

209. No Defendant is entitled to qualified immunity for their actions.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

210. Plaintiff is entitled to reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

**Answer: The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

## COUNT V:
## VIOLATION OF THE FOURTH, EIGHTH, AND FOURTEENTH
## AMENDMENT RIGHTS, COGNIZABLE UNDER 42 U.S.C. § 1983
### *As to Defendant Jackson County*

211.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

**Answer: Defendants hereby incorporate by reference the responses to the allegations contained in all aforementioned paragraphs as if fully set forth herein.**

212.   The violations of Plaintiff's Constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, Plaintiff's damages, and the conduct of the individual Defendants, including, but not limited to, Defendant Jane Doe, were directly and proximately caused by the actions and/or inactions of Defendant Jackson County, which upon inference has encouraged, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs and to the need for more or different training, supervision, investigation, or discipline in the areas of:

  a.  JCDC corrections officers' and employees' duties and responsibility concerning the monitoring of inmates within JCDC;

  b.  JCDC corrections officers' and employees' duties and responsibilities concerning the protection of inmates from attacked within JCDC.

  c.  JCDC corrections officers' and employees' duties and responsibilities concerning intervention on inmate attacks;

  d.  JCDC's failure to secure the jail cells housing inmates during the overnight hours;

e. The failure to prevent JCDC corrections officer and employees from engaging in illegal conduct during the scope and course of their employment at JCDC;

f. The failure to identify and take remedial or disciplinary action against JCDC corrections officers and employees who were the subject of prior complaints of misconduct; and

g. The hiring and retention of corrections officer who are unqualified for their employment position.

**Answer:** **The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

213. As a direct and proximate result of the foregoing, Plaintiff has suffered – and continues to suffer, physical and psychological injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

**Answer:** **The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.**

214. As shown by the foregoing, Defendant Jackson County's conduct was willful, wanton, and malicious, and showed deliberate indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amounts sufficient to punish Defendant and/or deter it and others similarly situated from such conduct in the future.

54

**Answer:** The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.

215. Plaintiff is under information and belief that the aforementioned violations of Plaintiff's Constitutional rights is part of a pattern and practice of similar behavior on the part of Defendant.

**Answer:** The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.

216. Plaintiff is under information and belief that, at all times relevant herein, Defendant Piccinini had policymaking authority over the policies and procedures of Defendant Jackson County and JCDC that directly and proximately resulted in the deprivation of Plaintiff's Constitutional rights.

**Answer:** Defendants admit that Defendant Piccinini is a policymaker for the Jackson County Department of Corrections. Defendants deny the remaining allegations contained in this paragraph.

217. Plaintiff is entitled to reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

**Answer:** The information contained in this paragraph seeks a legal conclusion. To the extent an answer is required, Defendants deny.

## JURY TRIAL DEMANDED

1.      Defendants Jackson County and Piccinini request a jury trial on all issues.

## AFFIRMATIVE DEFENSES

Defendants Jackson County and Piccinini further raise the following affirmative defenses, in the alternative when applicable:

1.      Plaintiff fails to state a claim upon which relief may be granted.

2.      Plaintiff's claims are barred by qualified immunity.

3.      Plaintiff's claims are barred by official immunity.

4.      Plaintiff's claims are barred by the public duty doctrine.

5.      Plaintiff failed to mitigate damages.

6.      Plaintiff cannot make a viable claim pursuant to 42 USC § 1983 by arguing a violation of policy, practice, procedure or custom.

7.      Defendants cannot be liable for the actions of subordinates because of respondeat superior.

8.      Defendants acted in a manner that was proper, reasonable, lawful, and in good faith with respect to each and every alleged violation of the law stated in plaintiff's complaint.  Nor did defendants harbor malice, ill will or spite.

9.      Plaintiff's claim of deficient supervision or training, if any, fail because defendants did not receive notice of a pattern of unconstitutional conduct by their subordinate(s), did not demonstrate deliberate indifference to or tacit authorization of such conduct, did not fail to take sufficient remedial action to train or supervise

56

the offending subordinate(s), and no failure on defendants' part proximately caused an injury to plaintiff.

10.     Plaintiff's claims of deficient supervision or training, if any, fail because there is no viable, underlying claim against defendants' subordinate(s).

11.     Plaintiff's damages are limited to that amount allowed by statutory provisions.

12.     Plaintiff's injuries and damages are proximately caused by, in whole or part, the intentional or negligent acts or omissions of plaintiff or others, and therefore plaintiff is not entitled to recover against defendants.

13.     Punitive damages are not available.

14.     In further defense, Defendants incorporate by reference each and every additional affirmative defense that may be uncovered or made known during the investigation and discovery in this case. Defendants specifically reserve the right to amend this Answer to include affirmative defenses at the time that they are discovered.

WHEREFORE, Defendants Jackson County, Missouri and Joe Piccinini hereby answer Plaintiff's First Amended Complaint and ask that the claims against them be dismissed with prejudice, the costs assessed against Plaintiff, and request further relief deemed just and proper.

Respectfully submitted,

OFFICE OF THE COUNTY COUNSELOR

*/s/ Audrey L. Danner*
Assistant County Counselor
Missouri Bar No. 65863
Jackson County Courthouse
415 E. 12th Street, 2nd Floor
Kansas City, Missouri 64106
Phone: (816) 881-3355
Fax:    (816) 881-3398
aldanner@jacksongov.org
*Attorney for Defendants Jackson County,*
*Missouri & Piccinini*


## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notice to all parties of record including:

Jeremy D. Hollingshead
7777 Bonhomme Ave, Suite 2401
St. Louis, Mo 63105
Jhollingshead@hdtriallawyers.com

*/s/ Audrey L. Danner*
Attorney for Defendant

58